Estate of D. W. Van Dever, Deceased, Marguerite Van Dever, Executrix v. Commissioner.
Estate of D. W. Van Dever v. Commissioner
Docket No. 27677.
United States Tax Court
1952 Tax Ct. Memo LEXIS 18; 11 T.C.M. (CCH) 1179; T.C.M. (RIA) 52352; December 8, 1952
Lee S. Jones, Esq., 920 Kentucky Home Life Bldg., Louisiville, Ky., for the petitioner. Robert E. Johnson, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency in the estate tax of petitioner in the amount of $7,438.31. The sole question for our decision is whether $30,000 in currency in a safe deposit box in an envelope bearing the name of decedent's wife in his handwriting should, as the Commissioner *19 has determined, be included in decedent's gross estate under section 811 (a), I.R.C., as being property of the decedent, or, in the alternative, under section 811 (c) as being a transfer of property from decedent to his wife made by him in contemplation of death. Other adjustments made by the Commissioner in his notice of deficiency are not contested by petitioner. The stipulation of facts is adopted. Findings of Fact D. W. Van Dever, hereinafter called decedent, died testate June 5, 1947, at the age of 56 years. His surviving widow, Marguerite Van Dever, hereinafter called the wife, to whom he was married May 18, 1929, was named executrix in his will and qualified as such under order of the County Court of Carroll County, Kentucky, and filed a Federal estate tax return with the collector of internal revenue for the district of the State of Kentucky. According to this return the total value of the estate was $102,916.34, consisting principally of items valued as follows: 90-acre farm, $15,750; stocks and bonds, $38,740.25; cash on deposit in two banks subject to check, $13,626.26; $30,000 in currency money in safe deposit box, etc. The $30,000 in currency *20 involved here was not included in the return, but the Commissioner added same to the gross value of the estate in his deficiency notice. When decedent died the $30,000 in question was in lock box No. 3325 of the Citizens Fidelity Bank & Trust Company of Louisville, Kentucky, hereinafter called the Louisville Bank, and was contained in a large envelope, and written thereon, in the handwriting of decedent, were the words "Marguerite Van Dever", no other writing being thereon. The same lock box then also contained another package of $30,000 in currency, with no name on it, no wrapping, and around it to hold it together was a rubber band and a string. This lock box decedent rented from the bank on March 29, 1945, with the right and privilege of decedent's wife to enter the box with or without decedent being present. Prior to rental and use of box 3325, decedent and wife had used lock box No. 4516 in the same bank. The bank records as to entries in these lock boxes were as follows: Lock Box No. 4516
D. W. Van Dever,
October 18, 1944
D. W. Van Dever,
February 1, 1945
D. W. Van Dever,
March 21, 1945
Lock Box No. 3325
D. W. Van Dever,
March 29, 1945
D. W. Van Dever, February 20, 1947
Mrs. D. W. Van Dever,
March 24, 1947
*21 The wife was with decedent when most of these entries were made, and they each kept money therein, but in separate packages. When the lock box was first rented on October 18, 1944, the wife was with the decedent, and she inquired of the bank's vice president whether any doubt could arise concerning the ownership of her money if kept in the same box, and he told her it would be all right, but her money should be marked to distinguish it from that of her husband. Whereupon, decedent wrote her name, "Marguerite Van Dever", on the envelope and she put her money therein amounting to $27,800 in currency which she had theretofore accumulated and left the envelope containing the money in the lock box continuously until her husband's death. On February 27, 1947, when she and her husband were at the bank, she placed in the same envelope an additional $2,200 in currency which her husband had given her in the fall of 1946, so as to make her savings equal to the $30,000 he then had in cash. The envelope containing this money remained in the bank until her husband's death. This $2,200 was kept by her in their lock box in the Carrollton bank until February 27, 1947, when she placed it in the lock *22 box in the Louisville Bank. Decedent and wife throughout their married life always had a joint safe deposit box, first in the bank at Ghent, Kentucky, and when the bank there failed in 1930, they rented one from the bank in Carrollton, Kentucky, which they kept until his death. Decedent's will left to his wife all of his estate except the farm, which went to his two sisters, but the wife was given the right to live in the home thereon "until she can properly locate". Decedent and his wife had no children. During their entire married life the resided on the farm he owned when he died. It was situated one mile from Ghent, five miles from Carrollton, and 55 miles from Louisville. Decedent's principal business was farming and after 1936 he also operated a tobacco warehouse, in which he owned a one-third interest. The wife, when she married and for several prior years, was a school teacher. Thereafter she devoted her time to housekeeping and assisting her husband in operation of the farm. After 1936 the husband devoted less time and the wife more time to the farm. Throughout their married life decedent and his wife kept their funds separate. He kept cash in several banks subject *23 to check, and he also kept money in safe deposit boxes. She never kept her money on deposit, but kept it at home or generally in a safe deposit box. She kept no books or records of her income or expenditures. Prior to her husband's death she made no investments. Thereafter, in 1948, she bought with $40cash,000 worth of Government bonds and later bought a home in Carrollton. At the time of her marriage the wife had about $1,000 in cash she had saved from her teacher's salary. Later she inherited $500 in cash from her aunt. Beginning in 1929 and continuing until his death, decedent and continuing until his death, decedent and his wife operated the farm on the basis of an informal partnership. She received as her own funds all proceeds from dairy products and poultry. She also received about one-half of the net proceeds of other farm income annually. In addition, decedent paid her $100 monthly for household expenses. She saved any unused part of this allowance as her own funds. The entire income from the farm was reported by decedent as his income in his Federal income tax returns which he filed each year. In 1939 decedent, in a letter to the internal revenue agent at Louisville, relative *24 to an investigation as to his 1938 income tax return, stated "my wife had no income during the year 1938". On February 1, 1945, decedent borrowed $30,000 from the Louisville Bank on a demand note bearing one per cent interest per year, which amount was placed to his checking account, and gave as collateral security therefor U. S. Treasury bills due April 19, 1945, with a face value of $30,000. On March 29, 1945, decedent repaid this loan and the interest paid thereon was $47.42. The wife knew nothing about this transaction. In the fall of 1946, decedent and his two co-owners sold the tobacco warehouse for $75,000, but only one-fourth of the purchase price was then paid. The remaining three-fourths was paid after decedent's death. Prior to the early part of March 1947, decedent was apparently in good health. He was physically strong and active in business and civic affairs and had never theretofore suffered any serious illness and had never been hospitalized. He continued his work on the farm and at the warehouse until the latter part of February 1947, when the tobacco season ended. Early in March 1947, he had a pain in his side and went to his local doctor who examined him and *25 thought he had a malignant trouble and recommended that a specialist be consulted. On March 23, 1947, decedent went to Louisville and consulted a specialist, where he was examined and an operation was recommended and performed about the middle of April 1947. He was found to have cancer. He died on June 5, 1947. On March 27, 1947, while decedent was ill and in the hospital in Louisville, the wife went to the Louisville Bank and entered their lock box alone where there was "a little bit of extra money" amounting to about two or three hundred dollars, which she took from the lock box to pay for expenses incurred in her husband's illness. The $30,000 in money here in question was not the property of decedent at the time of his death, but was the property of his wife. Furthermore, it had not been given or transferred to the wife by the decedent in contemplation of death, nor had it been transferred by decedent to his wife with the intention that the transfer "take effect in possession or enjoyment at or after his death". Opinion The issue here presented is purely factual. Was the $30,000 in the safety deposit box the property of decedent at the time of his death? If not, and it *26 was the wife's property, then had it been transferred to her by the decedent in contemplation of death? We think the answer to both of these questions is in the negative and we have so found in our ultimate finding of facts. The initial and a very cogent circumstance indicating the wife's ownership was her name on the envelope containing the money in the handwriting of decedent. This was a badge of her ownership, plus recognition of it by the decedent. Another corroborative circumstance indicating that she had money in the lock box is revealed in the conversation between the bank official and the decedent and his wife on October 18, 1944, when the banker, replying to their inquiry, advised there would be no question as to the ownership of her money though kept in the same box with that of her husband, if it was marked to distinguish it from his. Also a corroborative circumstance is that throughout her married life she always kept her money in cash and in a safety deposit box. In addition to these circumstances, we have the positive testimony of the wife that the $30,000 was her property; that on October 18, 1944, after the conversation with the banker, decedent wrote her name *27 on the envelope and she placed therein $27,800 which she had theretofore accumulated and had in her possession, and that on February 20, 1947, she placed in the envelope an additional $2,200 which her husband had given her in the fall of 1946, and which she had theretofore kept in a lock box in the bank at Carrollton, Kentucky. The wife having never deposited any of her money in the bank, and having kept no books or records of earnings and savings, she was unable to account exactly for the source of all the money in question. It represented her earnings, gifts received and savings throughout her married life of 18 years, plus the savings from her salary as school teacher. Her ability to save $1,000 from this meager salary is proof of her thrift. She did estimate and approximate the sums received from these various sources, which totaled $30,000, but it was not as satisfactory as though she had kept a record of same. Respondent's counsel, on cross examination and in brief, seeks to discredit her testimony by reason of this, but considering the record as a whole, we do not feel justified in substituting surmise and suspicion for her sworn and uncontradicted testimony. Furthermore, *28 the evidence reveals that the money in question was not a gift or transfer to her from the decedent made by him in contemplation of death, and the record wholly refutes this alternative determination and contention of the respondent. Since petitioner is not contesting other adjustments made by respondent, Decision will be entered under Rule 50.